**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MORGAN KUKOVEC, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No. 1:22-cv-03829 |
| | Hon. Martha M. Pacold, *presiding* |
| *Plaintiff,* | Hon. Jeffrey T. Gilbert*, Magistrate* |
| | |
| | Defendant's Motion to Dismiss Complaint; Declaration of Chira Schaad in support thereof; Request for Judicial Notice in support thereof filed and served herewith |
| *v.* | |
| | |
| L'ORÉAL USA, INC. D/B/A L'ORÉAL PARIS, | |
| | |
| *Defendant.* | |

---

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

---

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ....................................................................... 1

II.     STATEMENT OF FACTS ............................................................................... 2

     A.     Relevant Procedural History ................................................................. 2

     B.     The Allegations of the Complaint ......................................................... 3

     C.     The VTO Feature and Website Allegedly Accessed By Plaintiff ........... 3

          1.     The Privacy Policy on the Website ............................................ 4

               a.     What information is collected ........................................ 4

               b.     The purpose of the collection and how the data is used ............... 5

               c.     How long the data will be stored ................................... 5

               d.     How the data is protected ............................................. 5

          2.     The Terms of Use of the Website ............................................. 6

III.    ARGUMENT ................................................................................................ 7

     A.     This Action Should Be Dismissed In Favor of Arbitration ................... 7

          1.     Plaintiff Entered Into an Enforceable, Binding Arbitration Agreement ................................................................................... 8

               a.     Plaintiff's claims fall within the Arbitration Agreement. ............. 9

               b.     The website Terms of Use are enforceable. ................................... 9

               c.     Hyperlinks are sufficient to form enforceable agreements. ......... 10

               d.     Plaintiff consented to the Privacy Policy and the Terms of Use. .................................................................................... 10

     B.     The Complaint Fails To State A Cognizable Legal Claim .................. 11

          1.     Plaintiff Consented To A BIPA-Compliant Privacy Policy ................... 11

                a.     The Section 15(a) claim fails because of the Privacy Policy. ...... 11

                b.     The Section 15(b) claim fails because Plaintiff received the required notice from the Privacy Policy and provided a release. ..................................................................................... 13

          2.     Plaintiff Has Not Met Her Pleading Burden Under Rule 8 .................. 14

IV.    CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acaley v. Vimeo, Inc.*,
  464 F. Supp. 3d 959 (N.D. Ill. 2020) ...................................................................10

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)................................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................11, 15

*Bell. Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................14, 15

*Berkson v. Gogo LLC*,
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) .....................................................................8

*Bernal v. ADP LLC*,
  No. 2017-CH-12364, 2019 WL 5028609 (Ill. Cir. Ct. Aug. 23, 2019) ................12

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ................................................................................15

*Cont'l Cas. Co. v. Am. Nat'l. Ins. Co.*,
  417 F.3d 727 (7th Cir. 2005) ..................................................................................7

*Everette v. Union Pac. R.R.*,
  No. 04 C 5428, 2006 WL 2587927 (N.D. Ill. Sept. 5, 2006)..................................7

*Faulkenberg v. CB Tax Franchise Sys., LP*,
  637 F.3d 801 (7th Cir. 2011) ..................................................................................8

*Ferguson v. L'Oréal USA, Inc.*,
  U.S.D.C. C.D. Ill. Case No. 21-cv-03175................................................................2, 3

*Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*,
  No. 17 CV 1542, 2018 WL 2933608 (N.D. Ill. June 12, 2018)............................10

*Goplin v. WeConnect, Inc.*,
  893 F.3d 488 (7th Cir. 2018) ..................................................................................2

*Heard v. Becton, Dickinson & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) ...................................................................15

**TABLE OF AUTHORITIES**
(continued)

Page

*Hines v. Overstock.com, Inc.*,
  380 F. App'x 22 (2d Cir. 2010) ................................................................................................9

*Hubbert v. Dell Corp.*,
  835 N.E.2d 113 (Ill. App. Ct. 2005) ......................................................................................10

*Jacobs v. Hanwha Techwin Am., Inc.*,
  2021 WL 3172967 (N.D. Ill. Jul. 27, 2021)...........................................................................15

*Janiga v. Questar Cap. Corp.*,
  615 F.3d 735 (7th Cir. 2010) ..................................................................................................8

*Joyce v. DLA Piper Rudnick Gray Cary LLP*,
  888 N.E.2d 657 (Ill. App. Ct. 2008) ........................................................................................8

*Kloss v. Acuant, Inc.*,
  462 F. Supp. 3d 873 (N.D. Ill. 2020) ....................................................................................15

*Kukovec v. The Estee Lauder Cos.*,
  U.S.D.C. N.D. Ill. Case No. 1:22-cv-01988 ............................................................................2

*Kukovec v. L'Oréal USA Prods., Inc.*,
  U.S.D.C. N.D. Ill. Case No. 1:22-cv-01990 ..............................................................1, 2, 3, 12

*Kuznik v. Hooters of Am., LLC*,
  No. 1:20-CV-01255, 2020 WL 5983879 (C.D. Ill. Oct. 8, 2020).............................................7

*Lamps Plus Inc. v. Varela*,
  139 S. Ct. 1407 (2019)..............................................................................................................9

*McDonald v. Symphony Bronzeville Park, LLC*,
  2022 IL 126511 ......................................................................................................................12

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017).................................................................................................9, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).....................................................................................................................9

*Nicholas v. Wayfair, Inc.*,
  410 F. Supp. 3d 448 (E.D.N.Y. 2019) .................................................................................9, 10

*Orgone Cap. II, LLC v. Daubenspeck*,
  912 F.3d 1039 (7th Cir. 2019) .............................................................................................2, 3

## TABLE OF AUTHORITIES
(continued)

**Page**

*Perry v. Thomas*,
    482 U.S. 483 (1987)..............................................................................................7

*Sorkin v. Target Corp.*,
    No. 21 C 3546 (N.D. Ill. June 2, 2022).........................................................14

*Starke v. Gilt Groupe, Inc.*,
    No. 13 CIV 5497 LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)....................10

*Starke v. SquareTrade, Inc.*,
    913 F.3d 279 (2d Cir. 2019)...................................................................9

*Tims v. Black Horse Carriers, Inc.*,
    2021 IL App (1st) 200563, 184 N.E.3d 466 ...........................................13

*Valley v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    464 F. Supp. 3d 634 (S.D.N.Y. 2020).....................................................10

*Watson v. Legacy Healthcare Fin. Servs., LLC*,
    2021 IL App (1st) 210279.....................................................................13

*Zhan v. Hogan*,
    No. 418CV04126SLDJEH, 2018 WL 9877970 (C.D. Ill. Dec. 18, 2018) ................8

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
    417 F.3d 682 (7th Cir. 2005) ...............................................................7

**Statutes**

740 ILCS
    14/15(a)..............................................................................11, 12, 14
    14/15(b)...................................................................................13, 14
    14/20.........................................................................................14

9 U.S.C.
    § 2............................................................................................8
    § 4............................................................................................7

**Other Authorities**

AAA Commercial Arbitration Rules & Mediation Procedures.......................................8

Fed. R. Civ. P.
    11(b)(3) ......................................................................................12

## I.     **PRELIMINARY STATEMENT**

Plaintiff Morgan Kukovec ("Plaintiff") has filed her second suit asserting violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA") against a "L'Oréal" entity based on her alleged one-time visit to www.lorealparisusa.com, this time against L'Oréal USA, Inc. ("L'Oréal USA").  However, this case suffers from nearly all of the same fatal defects under  Rule 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure ("Rules") that plagued her previously dismissed case against L'Oréal USA Products, Inc. ("L'Oréal Products") (*see Kukovec v. L'Oréal USA Prods., Inc.*, U.S.D.C. N.D. Ill. Case No. 1:22-cv-01990), including:

- ***Plaintiff agreed to arbitrate her claims:***  Plaintiff agreed in the Terms of Use, posted by hyperlink on every page of the website that Plaintiff allegedly visited, that L'Oréal USA could, "at its sole discretion," require her to arbitrate "any and all disputes and causes of action related to or connected with" L'Oréal USA's (or one of its affiliates') website(s)."

- ***Plaintiff expressly consented to a BIPA-compliant Privacy Policy:***  The Virtual Try-On ("VTO") tool at issue is only accessible if Plaintiff first consents to the Privacy Policy that has all of the information required by BIPA.

- ***Plaintiff has not met, and cannot meet, her Rule 8 pleading burden:***  Plaintiff alleges only that she visited www.lorealparisusa.com, but insufficiently pleads BIPA claims based on an unspecified number of other websites that she did not allegedly visit.  Further, Plaintiff fails to allege with even minimal specificity that, how, or when L'Oréal USA possessed or obtained her biometrics, including from websites she never visited.

Plaintiff has twice now failed to assert her claims in the proper arbitral forum and inadequately pled those claims. Plaintiff has unnecessarily burdened L'Oréal USA and this Court, and her Complaint should be dismissed with prejudice under Rule 12(b)(3) or Rule 12(b)(6).

## II.    STATEMENT OF FACTS

### A.    Relevant Procedural History

This is the second Complaint filed by Plaintiff alleging violations of BIPA based on the VTO tool on www.lorealparisusa.com.  Plaintiff originally sued L'Oréal Products on February 15, 2022, with essentially the same complaint (but for changing the defendant and including two new jurisdictional allegations), asserting violations of BIPA.[1]  *See Kukovec*, U.S.D.C. N.D. Ill. Case No. 1:22-cv-01990.

Plaintiff refused to either amend or dismiss her complaint against L'Oréal Products even though the Terms of Use of www.loreaparisusa.com identifies L'Oréal USA as the website owner, and despite L'Oréal USA providing Plaintiff proof of its ownership and offering to accept service. (*See* Request for Judicial Notice ("RJN") Ex. B at 2[2]; *see also Kukovec*, U.S.D.C. N.D. Ill. Case No. 1:22-cv-01990, at Dkts. 33-34.)  Consequently, L'Oréal Products had to incur significant costs to prepare and file a Motion to Dismiss.  That motion argued, *inter alia*, that Plaintiff's refusal to dismiss her Complaint and sue the correct party was most likely because Plaintiff and her counsel hoped to avoid combination of her case with a different plaintiff's ("Ferguson") earlier-filed suit against L'Oréal USA that likewise challenged the VTO tool on www.lorealparisusa.com under BIPA.  *See Ferguson v. L'Oréal USA, Inc.*, U.S.D.C. C.D. Ill. Case No. 21-cv-03175.

Ferguson dismissed her lawsuit against L'Oréal USA after receiving technical information demonstrating that the operations and technical specifications of the VTO tool on

---

[1] On the same day she sued L'Oréal Products, Plaintiff, through the same counsel, also filed a BIPA Complaint against The Estee Lauder Companies' VTO tool.  *See Kukovec v. The Estee Lauder Cos.*, U.S.D.C. N.D. Ill. Case No. 1:22-cv-01988 at Dkt. 1.

[2] Judicial notice of the at-issue website, including the Terms of Use and Privacy Policy linked to at every page therein, is appropriate given the allegations of the Complaint.  *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018); *Orgone Cap. II, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

www.lorealparisua.com do not support a viable claim under BIPA.[3]  With the threat of having her case subsumed within the *Ferguson* suit ended, on July 15, 2022, Plaintiff dismissed her case against L'Oréal Products, only to refile the virtually identical Complaint against L'Oréal USA. *See Kukovec*, U.S.D.C. N.D. Ill. Case No. 1:22-cv-01990, at Dkt. 36.

### B.   The Allegations of the Complaint

The current Complaint again alleges that on or around December 20, 2021, Plaintiff used a VTO tool on the website, www.lorealparisusa.com, to test how a lipstick would look if applied to her face. (Dkt.1 ¶¶ 27-28.)  Plaintiff did not purchase the lipstick that she allegedly tested, and did not set up an account on the website she visited.  (*Id*. ¶ 29.)  Based on this single visit, Plaintiff asserts two counts under BIPA against L'Oréal USA—one, under section 15(b), for L'Oréal USA's alleged failure to provide written disclosures or obtain a written release prior to allegedly collecting her biometrics, and another, under section 15(a), for allegedly failing to develop a publicly available written policy as required by BIPA.  Plaintiff also seeks to represent a class of Illinois residents who used a VTO tool on the website that she visited, and on eight other websites that Plaintiff did not visit.  (*See id*. ¶¶ 1-11, 21-25, 31, 33-36, 38, 43-49, 58, 61.)

### C.   The VTO Feature and Website Allegedly Accessed By Plaintiff

Plaintiff inconsistently alleges, on the one hand, that there is no relevant written policy or release for www.lorealparisusa.com, but, on the other hand, that she reviewed the detailed Privacy Policy for that website which addresses user-generated content including photographs (and the retention of such content). (Dkt. 1 ¶¶ 21-25, 27, 32-35.)  The undisputable fact is, prior to using the VTO tool on www.lorealparisusa.com, each visitor encounters a pop-up window that requires consent to the processing of the visitor's image ("Consent Pop-Up") and advises that the user

---

[3]*See id*. at Dkts. 17-18.  Plaintiff received, but chose to disregard, the same information.  *See Kukovec*, U.S.D.C. N.D. Ill. Case No. 1:22-cv-01990, at Dkts. 28, 30.

may learn more about the user's choices by visiting the hyperlinked Privacy Policy:



(*Id*. ¶ 16; Declaration of Chira Schaad ("Schaad Decl."), Ex. B at 1-2; RJN Ex. C at 8-9.) As shown above, the hyperlink is underlined and in a font color contrasting with the background. (*Id*.) The Consent Pop-Up has been in place on www.lorealparisusa.com since the VTO tool was first publicly accessible on the website. (Schaad Decl. ¶¶ 3-5.)

### 1.    The Privacy Policy on the Website

The Privacy Policy hyperlinked in the VTO Consent Pop-up—that Plaintiff alleges she reviewed (Dkt.1 ¶ 22 n.3)—is also accessible from conspicuous links appearing at the bottom of each webpage of www.lorealparisusa.com. (*See, e.g.*, Schaad Decl., Exs. A at 7, E at 2; RJN Exs. C and D.) The Privacy Policy describes in detail what information, if any, may be collected from website users; the purpose for such collection and how the information will be used; how long the information will be stored; user rights regarding information return or deletion; and how the information is protected. (*See* Schaad Decl. ¶ 6, Ex. C; RJN Ex. A.)

### a.    What information is collected

The Privacy Policy includes a detailed table listing examples of the categories of personal information that may be collected from website users, including "Identifiers", "Visual Information" and inferences that may be drawn from the same. (Schaad Decl., Ex. C at 3-5; RJN Ex. A at 3-5.) The Privacy Policy additionally discloses, "If you use one of our virtual try on features, we may collect and store your image(s)." (*See* Schaad Decl., Ex. C at 5; RJN Ex. A at 5.)

### b. **The purpose of the collection and how the data is used**

The Privacy Policy comprehensively explains how data may be used, including for providing tailored and personalized content, services, ads, and offers; fulfilling product purchases and processing payments; analyzing products and services to improve effectiveness of websites and offerings; conducting research and analytics; and enforcing the Terms of Use. (*See* Schaad Decl., Ex. C at 7-8; RJN Ex. A at 7-8.) The Privacy Policy also explains whether information is shared with third parties. For example, it states that L'Oréal USA (as the owner and operator of www.lorealparisusa.com) does not sell Personal Information to third parties, but may share data with third party service providers acting on its behalf, and also with other entities and affiliates of L'Oréal USA. (*See* Schaad Decl., Ex. C at 8-9; RJN Ex. A at 8-9.) These service providers are prohibited from using disclosed information for independent marketing or business purposes. (*Id.*)

The Privacy Policy also clarifies that user information may be disclosed to comply with a legal obligation; when the law requires it; at the request of government authorities; to verify or enforce the hyperlinked "Terms of Use" or other policies; to respond to an emergency; or to protect rights, property, safety, or security of third parties, website visitors, or the public. (*See id.*)

### c. **How long the data will be stored**

The Privacy Policy states that L'Oréal USA will retain user Personal Information as long as a user's account is active or as needed to provide services and as necessary to comply with legal obligations, resolve disputes, and enforce agreements. (*See* Schaad Decl., Ex. C at 9; RJN Ex. A at 9.) Further, the Privacy Policy explains that users may request that L'Oréal USA not use their Personal Information, and details how users can submit such requests. (*See id.*)

### d. **How the data is protected**

Finally, the Privacy Policy details that "L'Oréal USA maintains reasonable safeguards to protect Personal Information against loss, unauthorized use, disclosure or destruction and when

transferring information for processing and requires third parties providing services on our behalf to do the same." (*See* Schaad Decl., Ex. C at 13; RJN Ex. A at 13.) Additionally, the Privacy Policy explains what may happen to user data if L'Oréal USA ceases to exist, including due to acquisition, bankruptcy, or reorganization. (*See* RJN Ex. A at 9.)

### 2. <u>The Terms of Use of the Website</u>

The Privacy Policy also references and hyperlinks to the Terms of Use governing the website Plaintiff allegedly visited, and admonishes that the Terms of Use will be enforced. (*See* Schaad Decl., Ex. C at 8, 14; RJN Ex. A at 8, 14.) In addition to its explicit highlighting in the Privacy Policy, conspicuous links to the Terms of Use appear on other webpages where the VTO feature is available on the website Plaintiff allegedly visited. (*See* Schaad Decl., Exs. A at 7, E at 2; RJN Ex. C at 7.) The Terms of Use unequivocally state that they "apply to all users of the Site" and that New York law governs use of the site. (Schaad Decl., Ex. D at 2, 9; RJN Ex. B at 2, 9.) The Terms of Use includes the mandatory arbitration provision ("Arbitration Provision") depicted below, which confirms that website users agree that "L'Oréal USA or one of its affiliates" may require that any and all disputes and causes of action related to or connected with the websites, Terms of Use, and related offerings be resolved individually, and without resort to a class action, by arbitration under the rules of the American Arbitration Association ("AAA"), and with the Federal Arbitration Act ("FAA") governing interpretation and enforcement:

**Arbitration**

By using this Site, you agree that L'Oréal USA or one of its affiliates at its sole discretion, may require that: (1) any and all disputes and causes of action related to or connected with these Terms, the Site, and the related offerings shall be resolved individually, without resort to any form of class action, and exclusively by final and binding arbitration under the rules of the American Arbitration Association and held at the AAA regional office nearest the participant; (2) the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings at such arbitration; and (3) judgment upon such arbitration award may be entered in any court having jurisdiction. You understand and agree that you are waiving your right to sue or go to court to assert or defend your rights under this contract.

A printed version of the Terms of Use and of any notice given in electronic form shall be admissible in judicial or administrative proceedings based upon or relating to the Terms of Use to the same extent and subject to the same conditions as other business documents and records originally generated and maintained in printed form.

These Terms of Use are the entire agreement between you and us with respect to the Site and any User Content and supersede all prior or contemporaneous communications and proposals (whether oral, written or electronic) between you and us with respect to those matters. If any provision of these Terms of Use is found to be illegal or unenforceable, the remainder of the Terms of Use shall be unaffected and shall continue to be fully valid, binding, and enforceable. The failure of either party to exercise in any respect any right provided for herein shall not be deemed a waiver of any further rights hereunder. No agency, partnership, joint venture, or employment relationship is created as a result of these Terms of Use, and neither party has any authority of any kind to bind the other in any respect.

(*See* Schaad Decl., Ex. D at 10; RJN Ex. B at 10.)

## III.  ARGUMENT

This Court should dismiss Plaintiff's case with prejudice pursuant to Rule 12(b)(3) or 12(b)(6), as the Complaint suffers from three critical flaws.  First, Plaintiff agreed to arbitrate her claims.  Second, before Plaintiff could use the VTO tool, she and every member of the putative class were required to provide written consent to a BIPA-compliant privacy policy.  Finally, Plaintiff cannot maintain causes of action for websites that she does not even allege she visited.

### A.  This Action Should Be Dismissed In Favor of Arbitration

As a threshold matter, this action should be dismissed with prejudice pursuant to Rule 12(b)(3) because Plaintiff agreed to arbitrate the claims of the Complaint at the election of L'Oréal USA, and L'Oréal USA so elects. "Where parties to a contract have agreed to arbitrate disputes arising from that contract, dismissal pursuant to Rule 12(b)(3) is appropriate." *Everette v. Union Pac. R.R.*, No. 04 C 5428, 2006 WL 2587927, at *3 (N.D. Ill. Sept. 5, 2006); *see also* 9 U.S.C. § 4 (indicating that where the Parties have agreed to arbitrate a dispute, the FAA—which is explicitly incorporated into the relevant Arbitration Provision (Schaad Decl., Ex. D; RJN Ex. B[4])— authorizes and requires an "order directing that such arbitration proceed in the manner provided for in such agreement" and "at any place therein provided for"); *Perry v. Thomas*, 482 U.S. 483, 490-91 (1987) (arbitration agreements within the scope of the FAA must be rigorously enforced).

Under the FAA, there are three requirements for arbitration: (1) a written agreement; (2) a dispute within the scope thereof; and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). When, as here, the arbitration agreement incorporates rules of the AAA, the Court may only resolve issues pertaining to the first of these requirements, with

---

[4] When ruling on a Rule 12(b)(3) motion to dismiss, the Court may consider materials outside the pleadings, including the arbitration agreement, without converting the motion to one for summary judgment. *Cont'l Cas. Co. v. Am. Nat'l. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005); *Kuznik v. Hooters of Am., LLC*, No. 1:20-CV-01255, 2020 WL 5983879, at *3 (C.D. Ill. Oct. 8, 2020).

the remaining two reserved for the arbitrator.[5]  *See Zhan v. Hogan*, No. 418CV04126SLDJEH, 2018 WL 9877970, at *10 (C.D. Ill. Dec. 18, 2018) (collecting cases, and holding that incorporation of AAA rules is "clear and unmistakable evidence that the parties intended for an arbitrator to decide questions of arbitrability"); *see also* AAA Commercial Arbitration Rules & Mediation Procedures ("AAA Rules"), R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim.").  Plaintiff clearly entered into a written agreement to arbitrate the claims at issue.  Consequently, her Complaint must be dismissed.

### 1. Plaintiff Entered Into an Enforceable, Binding Arbitration Agreement

Plaintiff entered into an enforceable, binding arbitration agreement, and as the Supreme Court has explained, "[c]ourts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest*., 570 U.S. 228, 233 (2013); *see also* 9 U.S.C. § 2. The existence of a binding arbitration agreement is a question of state contract law.  *Janiga v. Questar Cap. Corp*., 615 F.3d 735, 742 (7th Cir. 2010).  New York law applies to this question because the Terms of Use identifies it as the governing law. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) (citing *Hofeld v. Nationwide Life Ins. Co*., 59 Ill. 2d 522, 322 N.E.2d 454, 458 (1975) ("Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed.")). Under New York law, it is clear that Plaintiff must arbitrate her claims.[6]

---

[5] Even if the Court were to address the other two requirements, it would find they too support dismissal, as Plaintiff's claims fall squarely within the Arbitration Provision, and she filed a class action complaint, rather than comply with the individual arbitration mandate. (*See* Schaad Decl., Ex. D; RJN Ex. B.)

**[6] Even if the Court were to apply Illinois law, dismissal would still be warranted because the states' laws are substantively similar.  *See Joyce v. DLA Piper Rudnick Gray Cary LLP*, 888 N.E.2d 657, 661–62 (Ill. App. Ct. 2008); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015).**

### a. Plaintiff's claims fall within the Arbitration Agreement.

The Arbitration Provision encompasses Plaintiff's claims. It states that "L'Oréal USA or one of its affiliates . . . may require that: (1) any and all disputes and causes of action related to or connected with these Terms, the Site, and the related offerings shall be resolved individually, without resort to any form of class action, and exclusively by final and binding arbitration under the rules of the American Arbitration Association[.]" (*See* Schaad Decl., Ex. D at 10; RJN Ex. B at 10.) Because Plaintiff's Complaint is "related to or connected with" the Terms of Use and the L'Oréal Paris website, it is subject to the Arbitration Provision.[7]

### b. Website Terms of Use are enforceable.

Website Terms of Use are enforceable under New York law. "[I]n the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that [she has] at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010). Courts "look to the design and content of the relevant [web] interface to determine if the contract terms were presented to the offeree in [a] way that would put her on inquiry notice of such terms." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019). Courts may infer that a plaintiff, as a "reasonably prudent [internet] user," assented to online terms of use based on textual references and hyperlinks. *See Nicholas v. Wayfair, Inc.*, 410 F. Supp. 3d 448, 454 (E.D.N.Y. 2019); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2d Cir. 2017) ("In considering the question of reasonable conspicuousness, precedent and basic principles of

---

[7] If there are "any doubts concerning the scope of arbitrable issues," those doubts would have to be "resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Lamps Plus Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019).

contract law instruct that we consider the perspective of a reasonably prudent [ ] user.").[8]

Here, www.lorealparisusa.com puts anyone who visits it on notice that using the VTO tool requires consenting to all Terms of Use, including the Arbitration Provision. *See* Section II.B, *supra*. There are conspicuously displayed hyperlinks to the Terms of Use on the same webpage as the VTO tool, on every webpage of www.lorealparisusa.com, and within the Privacy Policy linked to at the Consent Pop-Up. This is sufficient to form an enforceable arbitration agreement.

### c. Hyperlinks are sufficient to form enforceable agreements.

New York law also favors enforcing hyperlinked agreements. In *Meyer*, 868 F.3d at 78, the Second Circuit held that a plaintiff agreed to arbitrate its claims based on "hyperlinks to the Terms and Conditions" underlined in a "dark print" that "contrast[ed] with [a] bright white background" and appeared "below the registration buttons." The hyperlink to the Terms of Use on www.lorealparisusa.com is equally conspicuous, and Plaintiff cannot avoid arbitration because the Arbitration Provision is hyperlinked in the Terms of Use. *See Valley v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020).

### d. Plaintiff consented to the Privacy Policy and the Terms of Use.

Lastly, because Plaintiff necessarily and affirmatively clicked the "consent" button to use the VTO, she must arbitrate her claims under the Privacy Policy and the Terms of Use discussed and linked therein. *See Starke v. Gilt Groupe, Inc.*, No. 13 CIV 5497 LLS, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014).[9] Plaintiff cannot avoid arbitration under these circumstances, nor by claiming she did not closely review the Terms of Use or the Arbitration Provision. *See Nicholas,*

---

[8] Illinois law is consistent with New York law. *See, e.g.*, *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121-22 (Ill. App. Ct. 2005); *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 965 (N.D. Ill. 2020).

[9] *See also Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.,* No. 17 CV 1542, 2018 WL 2933608, at *5 (N.D. Ill. June 12, 2018) (enforcing arbitration agreement in like circumstances).

410 F. Supp. 3d a, 454 (holding, "'failure to read a contract is not a defense to contract formation'") (*citing Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 50 (E.D.N.Y. 2017) (collecting cases)).

In sum, Plaintiff's attempted evasion of the Arbitration Provision by initiating a putative class action is impermissible. Plaintiff agreed to individually arbitrate all claims arising from her use of www.lorealparisusa.com, including any use of the VTO feature. She must abide by her agreement, and the Complaint should be dismissed in favor of arbitration under Rule 12(b)(3).

### B.    The Complaint Fails To State A Cognizable Legal Claim

If the Court does not dismiss this case in favor of arbitration, then the Complaint should be dismissed pursuant to Rule 12(b)(6) because it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" under Sections 15(a) and (b) of BIPA. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). First, the website Plaintiff allegedly visited undermines her claims: www.lorealparisusa.com has a BIPA-compliant Privacy Policy, and Plaintiff received adequate notice thereof and consented thereto before accessing the VTO tool. Second, Plaintiff has not pled her claims with sufficient specificity to satisfy Rule 8(a). And, leave to amend would be futile, because Plaintiff's alleged use of the VTO tool did not, and could not, result in L'Oréal USA possessing or obtaining her biometrics.

### 1.    Plaintiff Consented To A BIPA-Compliant Privacy Policy

#### a.    The Section 15(a) claim fails because of the Privacy Policy.

Plaintiff cannot state a cognizable claim under Section 15(a) in light of the Privacy Policy on the website Plaintiff allegedly visited. Section 15(a) requires a "written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information . . . ." 740 ILCS 14/15(a). L'Oréal USA's Privacy Policy meets this criteria. First, it is publicly available at www.lorealparisusa.com, including via hyperlink at the Consent Pop-Up. Plaintiff even admits to viewing the Privacy Policy, despite

11

inconsistently alleging that she has "never been informed of . . . any biometric data retention policy . . . ." (*Compare* Dkt. 1 ¶¶ 24, 34 *with id.* ¶¶ 16, 22, 32.) Second, the Privacy Policy explains that L'Oréal USA may "collect and store [a user's] image(s)" after use of the VTO tool, and that L'Oréal USA will retain user Personal Information as long as a user's account is active or as needed to provide services and as necessary to comply with legal obligations, resolve disputes, and enforce agreements. (*See* Schaad Decl., Ex. C; RJN Ex. A.) Third, the Privacy Policy specifies that, "we may delete certain records that contain Personal Information you have submitted through the Sites" and further indicates that users may request deletion of their Personal Information and identifies precisely how they can communicate such requests. (*See id.*)

Plaintiff may contend that the Privacy Policy does not comply with Rule 15(a) because it does not state that biometrics will be permanently destroyed within at least three years of users' last interactions with the VTO tool. That contention would be misguided for two reasons. First, Section 15(a) only applies to "[a] private entity ***in possession*** of biometric identifiers or biometric information[,]" 740 ILCS 14/15(a) (emphasis added), and the Complaint pleads ***no*** facts to establish that L'Oréal USA possesses her biometrics. *See Bernal v. ADP LLC*, No. 2017-CH-12364, 2019 WL 5028609, at *2 (Ill. Cir. Ct. Aug. 23, 2019) ("[T]here is no explicit requirement that the schedule or guidelines [discussed in Section 15(a)] exist 'prior to' possession of the biometrics information."). Plaintiff cannot cure this pleading defect, because, as Plaintiff was advised, (*see Kukovec*, No. 1:22-cv-01990, at Dkts. 28, 30), no biometrics ever leave the user's device during a VTO session on www.lorealparisusa.com. *See* Fed. R. Civ. P. 11(b)(3) (factual contentions in pleadings must at least be likely to have evidentiary support). Second, the "3 years" reference in Section 15(a) only sets the date by which a private entity in possession of biometrics must publish such policy. *See McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511,

¶ 22 (holding that Section 15(a) prescribes a time period within which "a private entity in possession of biometric[s] must make publicly available a written 'retention schedule and guidelines' it uses for permanently destroying biometric[s]"); *Watson v. Legacy Healthcare Fin. Servs., LLC*, 2021 IL App (1st) 210279, ¶ 51 (likewise holding that the "3 years" language in section 15(a), sets the date by which a private entity in possession of biometrics "owed plaintiff a written destruction policy"). *See also Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563, ¶ 31, 184 N.E.3d 466, 473 (holding that a defendant would only "violate section 15(a) by failing to develop a written policy establishing a retention schedule and destruction guidelines").

### b. The Section 15(b) claim fails because Plaintiff received the required notice from the Privacy Policy and provided a release.

Plaintiff also cannot state a cognizable claim under Section 15(b) due to the Privacy Policy and Consent Pop-Up on the website Plaintiff allegedly visited. Section 15(b) requires (1) informing consumers that their biometrics are being collected; (2) informing consumers of the specific purpose and length of term for which their biometrics are being collected; and (3) receiving an executed written release by the consumer. 740 ILCS 14/15(b). The Consent Pop-Up and Privacy Policy satisfy these requirements. *First*, the Privacy Policy provided Plaintiff adequate notice that biometrics may be collected or stored. (RJN Ex. A at 3-5 (indicating that users' "Identifiers" and "Visual Information" may be collected, and unambiguously stating, "[i]f you use one of our virtual try on features we may collect and store your image(s).").) *Second*, the Privacy Policy provided Plaintiff adequate notice about the purpose of information collection, how data is used, how long the information is stored, all potential recipients of data and corresponding limitations placed thereon, what could happen to user information if L'Oréal USA ceases to exist, and how users may request that L'Oréal USA not use their Personal Information. (*See id*. at 7-8, 9.) *Third*, Plaintiff executed a written release before accessing the VTO, when she clicked "I

Consent" to processing her image, in accordance with the hyperlinked Privacy Policy in the VTO Consent Pop-Up. (*See* Dkt.1 ¶¶ 16-17, 32; RJN Ex C.) As detailed above, *supra* II.C., before one can use the VTO tool on www.lorealparisusa.com, the user must click "I consent" to image processing in accordance with the hyperlinked Privacy Policy in the Consent Pop-Up. Because the Consent Pop-Up and Privacy Policy have been present since the launch of the VTO tool (*see* Schaad Decl., ¶ 5), Plaintiff simply cannot plead a viable claim under Section 15(b).

## 2.     Plaintiff Has Not Met Her Pleading Burden Under Rule 8

Even if Plaintiff's BIPA claims were not terminal due to the website she visited (they are), dismissal is still appropriate under Rule 12(b)(6) because the Complaint does not satisfy Rule 8. To do so, a complaint must have "[f]actual allegations [that are] enough to raise a right to relief above a speculative level[,]" and more than "a pleader's 'bare averment that he wants relief and is entitled to it.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 555 n.3 (2007) (citation omitted). The Complaint is rife with speculation and conclusory allegations, which do not meet this standard.

*First*, Plaintiff has not adequately pled, because she cannot plead, a legally plausible claim based on websites she did not visit (*see* Dkt. 1 ¶¶ 27, 36), as there is no way for her to have been aggrieved therefrom. *See* 740 ILCS 14/20. Therefore, Plaintiff's claims must be dismissed to the extent that she asserts a claim with respect to the VTO tool on other websites that she did not visit. *See Sorkin v. Target Corp.*, No. 21 C 3546, (N.D. Ill. June 2, 2022) (Dkt. No. 42) (holding that, because "Plaintiff has not alleged he suffered any injury with respect to those other products[,] [h]e lacks standing to pursue claims based on those products.")

*Second*, Plaintiff has not adequately pled that L'Oréal USA possesses or ever obtained her biometrics, which is a threshold requirement to state the claims she asserts. *See* 740 ILCS 14/15(a) ("A private entity in possession of biometric[s] . . ."); 740 ILCS 14/15(b) ("No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's

14

biometric[s] . . .").  The Section 15(a) claim is deficiently pled because the Complaint does not contain sufficient factual allegations to show L'Oréal USA "exercise[s] any form of control over the data or . . . h[olds] the data at [its] disposal."  *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020).  Rather, it only alleges in conclusory fashion that when Plaintiff used the VTO tool, "Defendant captured and collected her facial geometry." (*See* Dkt. 1 ¶ 30.) While Plaintiff speculates that the VTO tool "could not have provided the advertised experience if Defendant did not capture and collect [her] facial geometry[,]" (*id.*), the Complaint provides no foundation therefor, and contradictorily concedes that Plaintiff does not know if L'Oréal USA has biometrics.  (*See id* ¶¶ 52, 53e, 64, 65e.)

Plaintiff's Section 15(b) claim is likewise insufficiently pled, as the Complaint does not allege "specific facts to ground" the claim, such as "how, when, or any other factual detail" connecting L'Oréal USA to acquisition or capture of Plaintiff's biometrics. *See Jacobs v. Hanwha Techwin Am., Inc.,* 2021 WL 3172967 at *3 (N.D. Ill. Jul. 27, 2021).  The Complaint also fatally fails to show that L'Oréal USA took an active step to collect her biometrics.  *See id.*; *Heard*, 440 F. Supp. 3d at 966-67.  The Complaint's speculative allegations about potential acquisition of Plaintiff's biometrics, including those pled upon "information and belief," (*see id*. ¶¶ 25, 31, 35, 49-50, 58, 61-62), do not satisfy Rule 8.  *See Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 877 (N.D. Ill. 2020); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (clarifying that plaintiffs pursuing relief under BIPA must provide at least "some specific facts to ground those legal claims").  Neither do the "mere conclusory statements" in the Complaint that L'Oréal USA obtained Plaintiff's biometrics (Dkt. 1 ¶¶ 19, 23, 32-33, 49-50).  *See Iqbal* at 678.

## IV.  CONCLUSION

For the foregoing reasons L'Oréal USA requests that the Court dismiss this action with prejudice in favor of arbitration pursuant to Rule 12(b)(3) or, in the alternative, per Rule 12(b)(6).

Dated: September 23, 2022     Respectfully submitted,

               */s/ Aaron D. Charfoos*
               Aaron D. Charfoos (Bar No. 6277242)
               Adam M. Reich (Bar No. 6329295)
               Emma J. Lanzon (Bar No. 6329995)
               PAUL HASTINGS LLP
               71 S. Wacker Drive, Suite 4500

               Chicago, IL 60606
               Telephone: 312.499.6000
               aaroncharfoos@paulhastings.com
               adamreich@paulhastings.com
               emmalanzon@paulhastings.com

               *Counsel for Defendant,*
               L'ORÉAL USA PRODUCTS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2022, a copy of the foregoing was filed electronically and

served via CM/ECF upon the following parties:

>
> Elizabeth C. Chavez
> Bret K. Pufahl
> Robert M. Foote
> FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
> 10 W. State Street, Suite 200
> Geneva, IL 60134
> Tel. No.: (630) 232-7450
> Fax No.: (630) 232-7452
> Email: ecc@fmcolaw.com
>         bkp@fmcolaw.com
>         rmf@fmcolaw.com
>
> Hassan A. Zavareei
> Allison W. Parr
> Glenn E. Chappell
> TYCKO & ZAVAREEI LLP
> 1828 L Street NW, Suite 1000
> Washington, DC 20036
> Email: hzavareei@tzlegal.com
>         aparr@tzlegal.com
>         gchappell@tzlegal.com
>
> *Counsel for the Plaintiff and the Putative Class*

>
> */s/ Melissa J. Failla*
>
> Melissa J. Failla