**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| MORGAN KUKOVEC, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No. 1:22-cv-03829 |
| *Plaintiff,* | Hon. Martha M. Pacold, *presiding* |
|  | Hon. Jeffrey T. Gilbert*, Magistrate* |
| *v.* | |
| L'ORÉAL USA, INC. D/B/A L'ORÉAL PARIS, | |
| *Defendant.* | |

---

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

---

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................. 1

II.     ARGUMENT ........................................................................................ 2

      A.     This Action Should Be Dismissed In Favor of Arbitration ................... 2

           1.     The Arbitration Agreement is Valid .................................................. 3

                 a.     Plaintiff Had Actual Notice of and Consented to Arbitration........ 3

                 b.     At Minimum, Plaintiff Had Reasonable Inquiry Notice ............... 4

           2.     The Arbitration Agreement is Not Unconscionable ................................. 8

                 a.     The Agreement is Not Procedurally Unconscionable.................. 8

                 b.     The Agreement is Not Substantively Unconscionable ................. 9

      B.     The Complaint Fails To State A Plausible Legal Claim Under BIPA................. 10

           1.     Plaintiff's BIPA Claims Are Legally Untenable ..................................... 10

                 a.     L'Oréal USA's Privacy Policy Complies With the Requirements of Section 15(a)..................................................... 10

                 b.     Plaintiff Received the Required Notice Under Section 15(b) and Provided a Release ................................................................ 11

           2.     Plaintiff Fails to Meet Her Pleading Burden Under Rule 8 .................... 12

III.    CONCLUSION.................................................................................... 15

# Table of Authorities

**Page(s)**

**Cases**

*Acaley v. Vimeo, Inc.*,
464 F. Supp. 3d 959 (N.D. Ill. 2020) .....................................................................8

*Aminoff & Co, LLC v. Parcel Pro, Inc.*,
No. 210CV-10377 (AT)(KHP), 2022 WL 987665 (S.D.N.Y. Apr. 1, 2022) ...........7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................12, 15

*Behrens v. JPMorgan Chase Bank N.A.*,
2019 WL 1437019 (S.D.N.Y. Mar. 31, 2019) .......................................................3

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
No. 17CV04570LAKKHP, 2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017),
*report and recommendation adopted as modified*, No. 17-CV-4570 (LAK),
2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) ...................................................3, 8, 9

*Cont'l Cas. Co. v. Am. Nat'l. Ins. Co.*,
417 F.3d 727 (7th Cir. 2005) .................................................................................4

*De Jesus v. Gregorys Coffee Mgmt., LLC*,
No. 20-CV-6305 (MKB)(TAM), 2022 WL 4229331 (E.D.N.Y. June 9, 2022).......8, 9

*Everette v. Union Pac. R.R.*,
No. 04 C 5428, 2006 WL 2587927 (N.D. Ill. Sept. 5, 2006)...................................2

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012).....................................................................4

*Gold v. Deitsche Aktiengesllschaft*,
366 F.3d 144 (2d Cir. 2004)....................................................................................3

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ................................................10, 12, 13, 14

*Himber v. Live Nation Worldwide, Inc.*,
No. 16-CV-5001, 2018 WL 2304770 (E.D.N.Y. May 21, 2018) ...........................6

*Jacobs v. Hanwha Techwin Am., Inc.*,
2021 WL 3172967 (N.D. Ill. Jul. 27, 2021)....................................................13, 14

*Janiga v. Questar Cap. Corp.*,
615 F.3d 735 (7th Cir. 2010) ..................................................................................3

**Table of Authorities**
**(continued)**

**Page(s)**

**Cases**

*Kukovec v. The Estee Lauder Cos.*,
  U.S.D.C. N.D. Ill. Case No. 1:22-cv-01988 ....................................................................9

*Kukovec v. L'Oréal USA Prods., Inc.*,
  U.S.D.C. N.D. Ill. Case No. 1:22-cv-01990 ..................................................................13

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)..................................................................................4, 5, 6, 7

*Nicholas v. Wayfair Inc.*,
  410 F. Supp. 3d 448 (E.D.N.Y. 2019) ........................................................................5, 7

*Nicosia v. Amazon.com, Inc.*,
  No. 14-CV-4513, 2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017), *report and
  recommendation adopted*, 384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F.
  App'x 612 (2d Cir. 2020) ...............................................................................................7

*Perry v. Thomas*,
  482 U.S. 483 (1987)........................................................................................................2

*Pokorny v. Quixtar, Inc.*,
  601 F.3d 987 (9th Cir. 2010) .....................................................................................9, 10

*Powell v. Shiseido Americas Corp.*,
  No. 21-cv-2295 (C.D. Ill. filed Nov. 30, 2021) ...........................................................14

*Sablosky v. Edward S. Gordon Co.*,
  73 N.Y.2d 133 (1989) ...................................................................................................10

*Schroder v. Teufel*,
  No. 17 C 6119, 2017 WL 5569758 (N.D. Ill. Nov. 20, 2017)........................................2

*Starke v. SquareTrade, Inc.*,
  913 F.3d 279 (2d Cir. 2019).......................................................................................4, 9

*In re TikTok, Inc. Consumer Privacy Litig.*,
  No. 1:20-cv-04699 (N.D. Ill.) .........................................................................................9

*Valley v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  464 F. Supp. 3d 634 (S.D.N.Y. 2020)..............................................................................8

*Yuknis v. Atherton*,
  668 F. Supp. 1173 (N.D. Ill. 1987) ...............................................................................12

**Table of Authorities**
**(continued)**

**Page(s)**

**Cases**

*Zhan v. Hogan,*
   No. 418CV04126SLDJEH, 2018 WL 9877970 (C.D. Ill. Dec. 18, 2018) ..........................2, 3

**Statutes**

740 ILCS 14/15(a) ...................................................................................................................12

**Other Authorities**

Fed. R. Civ. P. 8(a) ................................................................................................................14

Fed. R. Civ. P. 11(b)(3)..........................................................................................................13

## I.    __INTRODUCTION__

Plaintiff Morgan Kukovec's ("Plaintiff") Response to Defendant L'Oréal USA, Inc.'s ("L'Oréal USA") Motion to Dismiss ("Motion") fails to rebut L'Oréal USA's Motion and must be dismissed with prejudice.[1]

*First,* Plaintiff does not identify a valid reason to avoid the arbitration provision to which she agreed. Plaintiff had **actual notice** of the arbitration agreement, as the Terms of Use ("Terms") containing the arbitration provision is directly referenced and hyperlinked in the Privacy Policy to which Plaintiff affirmatively consented, and additionally conspicuously hyperlinked from every other webpage on the website she allegedly visited (www.lorealparisusa.com). Plaintiff's alternative argument, that she should not have to arbitrate her claims because the arbitration agreement is unconscionable, fails to pass muster under governing New York law.

*Second,* Plaintiff does not adequately refute L'Oréal USA's arguments that she cannot state a plausible claim for relief under Sections 15(a) or (b) of BIPA. Because L'Oréal USA's Privacy Policy has all of the information required by Section 15(a) and Section 15(b) of BIPA, and Plaintiff executed the requisite release under Section 15(b), Plaintiff's claims are simply unsustainable.

*Finally*, Plaintiff's Response does not, because it cannot, retroactively cure the basic pleading failures of the Complaint, including Plaintiff's failure to sufficiently allege that L'Oréal USA was "in possession" of or "otherwise obtain[ed]" her biometric data. This is unsurprising, as the VTO software runs locally on the users' devices, and no biometrics ever leave the personal device of any user of the Virtual Try-On ("VTO") tool on www.lorealparisusa.com—information that L'Oréal USA has repeatedly brought to Plaintiff's attention.

---

[1] Throughout her response, Plaintiff repeatedly and ambiguously misidentifies "L'Oreal" [sic] as the defendant in this case. To be clear, the only defendant in this case is L'Oréal USA.

Accordingly, Plaintiff's Complaint should be dismissed, either pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(3), because Plaintiff agreed to arbitrate her asserted claims on an individual basis, or pursuant to Rule 12(b)(6), because Plaintiff consented to a BIPA-compliant Privacy Policy and has not met, and cannot meet, her pleading burden under Rule 8.

## II.    ARGUMENT

### A.    This Action Should Be Dismissed In Favor of Arbitration

This action should be dismissed in favor of arbitration because Plaintiff agreed to arbitrate the claims that she pleads in her Complaint. *See Perry v. Thomas*, 482 U.S. 483, 490-91 (1987) (arbitration agreements within the scope of the Federal Arbitration Act ("FAA") must be rigorously enforced). Indeed, the Terms for the website that Plaintiff allegedly visited specifically and conspicuously provides for arbitration of "any and all disputes and causes of action related to or connected with" the website that Plaintiff visited, the Terms therefor, and offerings thereon. (See Dkt. 18-5 at 10; Dkt. 18-9 at 10.)  Plaintiff does not dispute that the Terms contains an arbitration provision, which is expressly within the scope of the FAA, unambiguously incorporates the rules of the American Arbitration Association ("AAA"), and encompasses her claims. (*Id.*) Rather, Plaintiff argues that the arbitration agreement is invalid, because she did not have notice of L'Oréal USA's Terms, or unconscionable and therefore unenforceable. Neither argument has merit, and this action should be dismissed in favor of arbitration pursuant to Rule 12(b)(3).[2]  *See Everette v. Union Pac. R.R.*, No. 04 C 5428, 2006 WL 2587927, at *3 (N.D. Ill. Sept. 5, 2006).

---

[2] The existence of a valid arbitration agreement is the only question this Court needs to resolve in order to dismiss this case under Rule 12(b)(3). Plaintiff does not dispute that her claims were within the scope of the arbitration agreement, and, the arbitrability (or not) of Plaintiff's claims under this arbitration agreement, which provides for "final and binding arbitration under the rules of the American Arbitration Association," is a question within the exclusive province of the arbitrator. *See Zhan v. Hogan*, No. 418CV04126SLDJEH, 2018 WL 9877970, at *10 (C.D. Ill. Dec. 18, 2018) ("district courts within the Seventh Circuit have held that incorporation of AAA rules is clear and unmistakable evidence that the parties intended for an arbitrator to decide questions of arbitrability"); *see also Schroder v. Teufel*, No.

1. <u>**The Arbitration Agreement is Valid**</u>

The arbitration agreement is valid. Online arbitration agreements such as this one are routinely enforced. *See, e.g.*, *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17CV04570LAKKHP, 2017 WL 7309893, at *11 (S.D.N.Y. Nov. 20, 2017), *report and recommendation adopted as modified*, No. 17-CV-4570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018). "[I]n the absence of fraud or other wrongful act on the part of another contract party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them[.]'" *Gold v. Deitsche Aktiengesllschaft*, 366 F.3d 144, 149 (2d Cir. 2004) (citing *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (1920)).[3] Plaintiff has no evidence of fraud or other wrongful act on the part of L'Oréal USA, but argues that she did not assent to arbitration, and thus the arbitration agreement is invalid, because she did not have "reasonable notice" of the Terms. (*See* Dkt. 28 at 8.) Plaintiff's argument is untenable for two reasons: (1) she had actual notice of the Terms; and (2) the Terms is reasonably conspicuous and Plaintiff at least had the requisite inquiry notice thereof.

a. <u>**Plaintiff Had Actual Notice of and Consented to Arbitration**</u>

Plaintiff is bound by the arbitration provision because she had actual notice of the Terms

---

17 C 6119, 2017 WL 5569758, at *4 (N.D. Ill. Nov. 20, 2017) (same). Plaintiff errs in asserting that *Zhan* is "inapposite" because "the Seventh Circuit has not directly addressed the issue" of whether incorporating AAA rules into an arbitration provision delegates the question of arbitrability to the arbitrator. The court in *Zhan* expressly adopted the majority view within the Seventh Circuit that the incorporation of AAA rules is "unmistakable evidence" that the parties intended for an arbitrator to decide questions of arbitrability. *See Zhan*, 2018 WL 9877970, at *10.

[3] The existence of a binding arbitration agreement is a question of state contract law. *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). New York law applies here because the Terms identifies it as the governing law. (See Dkt. 18-5 at 9; Dkt. 18-9 at 9.) Notwithstanding Plaintiff's scattered, and unpersuasive, citations to cases applying other states' laws, Plaintiff appears to ultimately concede this point, as she exclusively cites New York law to support her unconscionability argument. (Dkt. 28 at 9-10.) Yet, even if Illinois law applied, the contractual validity analysis would not change, as New York and Illinois laws "are consistent on all material matters concerning contract formation." *See Behrens v. JPMorgan Chase Bank N.A.*, 2019 WL 1437019, at *11 n.14 (S.D.N.Y. Mar. 31, 2019).

incorporating the provision. *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836 (S.D.N.Y. 2012) (courts will enforce a website's terms and conditions where a user has actual notice of the terms and manifests assent). Plaintiff's Complaint and Response brief confirm that she had actual notice of the Terms, and clicked an "I Consent" box in order to access the VTO tool. In particular, Plaintiff conceded in both of those filings that before accessing the VTO tool she was presented with a pop-up window, which required her consent (the "Consent Pop-Up")—which Plaintiff provided—to the processing of her image, and advised Plaintiff that she could learn more about her choices by visiting the hyperlinked Privacy Policy. (*See* Dkt. 1 ¶¶ 16, 32; Dkt. 28 at 8.) Plaintiff has also conceded that she accessed the hyperlinked Privacy Policy, which not only incorporates the Terms by reference but also provides hyperlinks to the Terms. (*See* Dkt. 1 ¶ 22; Dkt. 28 at 8; 18-4 at 8-9).

### b. At Minimum, Plaintiff Had Reasonable Inquiry Notice

Even if Plaintiff did not have actual notice, she still must arbitrate her claims because Plaintiff at least had inquiry notice of the Terms incorporating the arbitration provision. *See Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019) ("Where an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent."). The existence of the Terms was reasonably communicated on the website.[4] *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 76 (2d Cir. 2017) (instructing that online arbitration

---

[4] Plaintiff does not oppose L'Oréal USA's Request for Judicial Notice of webpages from www.lorealparisusa.com, or the Declaration of Chira Schaad, which authenticates those webpages. (*See* Dkts. 28-29.) Rather, Plaintiff also asks the Court to take judicial notice of the website. (*See* Dkt. 29.) Accordingly, as Plaintiff agrees, the Court may consider those webpages when evaluating L'Oréal USA's Motion to Dismiss. *See also Cont'l Cas. Co. v. Am. Nat'l. Ins. Co*., 417 F.3d 727, 733 (7th Cir. 2005) (confirming propriety of considering materials outside the pleadings when ruling on a Rule 12(b)(3) motion to dismiss).

agreements are valid "where the existence of the terms [of use] was reasonably communicated to the user"). "[B]asic principles of contract law instruct that [the Court should] consider the perspective of a reasonably prudent [internet] user" confronted with hyperlinked text that contrasts with the background. *Id.* at 77-78. Under this lens, where an "assent" button is uncluttered, and the hyperlink appears directly adjacent to the consent button, reasonable notice has been provided. *See id.* at 78.[5]

Here, a reasonably prudent internet user would find the Terms reasonably conspicuous. As in *Meyer*, the website presented Plaintiff with an "I Consent" click-through option, in an uncluttered pop-up window, which Plaintiff had to, and did, click to confirm her consent, and the directly adjacent text was in a color that contrasted with the background and included a conspicuous hyperlink to the Privacy Policy:



(*See* Dkt. 1 ¶¶ 16, 28, 32; Dkt. 18-3.) A reasonably prudent user would understand that the Privacy

---

[5] Plaintiff tries to distinguish *Meyer* by arguing that the court applied California law. (Dkt. 28 at 7.) This is a red herring. As explained in *Meyer*, California and New York apply "substantively similar rules for determining whether the parties have mutually assented to a contract term." *See Meyer*, 868 F.3d at 74. Hence, as stated in *Meyer*, the "visibility" and "placement of the terms and conditions" may "support[] the inference that Plaintiff manifested her assent to [them]." *See Nicholas v. Wayfair Inc.,* 410 F. Supp. 3d 448, 454 (E.D.N.Y. 2019) (applying New York law).

Policy and Terms incorporated therein, including the arbitration provision, were "connected to the [use of the VTO tool]." *Meyer*, 868 F.3d at 78. As Plaintiff affirmatively clicked the "consent" button to use the VTO tool after she repeatedly encountered reasonably conspicuous references and hyperlinks to the Terms, she must arbitrate her claims.

Plaintiff's efforts to draw a contrary conclusion are unavailing. **First**, Plaintiff paradoxically asserts that the "Privacy Policy does not contain . . . any link to the Terms of Use," despite acknowledging that the Privacy Policy "links to the Terms of Use . . . at the bottom of the page[.]" (*See* Dkt. 28 at 8.) This is nonsensical and non-persuasive; the truth is anyone who accesses the hyperlinked Privacy Policy before manifesting their consent (as Plaintiff did) encounters a hyperlink to the Terms. (*See id*.; Dkts. 18-4 & 18-8 at 14.) In addition, the Privacy Policy explicitly incorporates the Terms, directly referencing the Terms at least twice, and admonishes that L'Oréal USA will enforce those Terms. (*See* Dkts. 18-4 &18-8 at 8, 9, 14.)

**Second**, Plaintiff's critique about the placement of the hyperlinks to the Terms is merely a non-substantive distraction. As Plaintiff concedes, the Terms is hyperlinked from the Privacy Policy that Plaintiff accessed, (*See* Dkt. 28 at 8), and the Policy specifically references the Terms (*see* Dkts. 18-4 &18-8 at 8, 9, 14).

In addition to the references and links within the Privacy Policy, Plaintiff received adequate inquiry notice of the Terms "by using the website, [as in so doing, Plaintiff] would have clicked on multiple [] webpages, including the homepage and interior pages" which "contained the reasonably conspicuous hyperlinked Terms of Use." *See Himber v. Live Nation Worldwide, Inc.,* No. 16-CV-5001, 2018 WL 2304770, at *5 (E.D.N.Y. May 21, 2018). The Terms appears twice on every webpage of www.lorealparisusa.com within a contrasting-colored banner:

6



(*See* Dkt. 18-4 at 14 (representative of the conspicuous hyperlinks to the Terms appearing on every webpage of www.lorealparisusa.com. (emphasis added))

**Third**, insofar as Plaintiff tries to deem the consented-to arbitration provision invalid because she did not closely review it, this too is unavailing. Plaintiff's lack of attention does not render the arbitration provision invalid because "'failure to read a contract is not a defense to contract formation.'" *Nicholas,* 410 F. Supp. 3d at, 454 (*citing Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 50 (E.D.N.Y. 2017) (collecting cases)).

**Lastly**, Plaintiff's protracted discussion about inapposite case law concerning browsewrap agreements is not at all relevant to the validity of this arbitration agreement. First, the agreement at issue is not a browsewrap agreement. It is either a clickwrap agreement or a hybrid between a clickwrap and a browsewrap agreement, because Plaintiff affirmatively clicked that she consented to the Privacy Policy, which expressly referenced and linked to the Terms therein, and the Terms likewise was conspicuously linked to from every webpage on the at-issue website. *See Nicosia v. Amazon.com, Inc.*, No. 14-CV-4513, 2017 WL 10111078, at *9 (E.D.N.Y. Aug. 18, 2017) (discussing types of internet agreements). Both types of agreements are regularly enforced. *See Meyer*, 868 F.3d at 75 (stating courts "routinely uphold clickwrap agreements"); *Aminoff & Co, LLC v. Parcel Pro, Inc.*, No. 210CV-10377 (AT)(KHP), 2022 WL 987665, at *4-7 (S.D.N.Y. Apr. 1, 2022) (granting motion to compel arbitration based on valid clickwrap agreement); *Nicosia*, 2017 WL 10111078, at *9-13 (affirming validity of arbitration agreement that was a hybrid between a clickwrap and browsewrap agreement, and recommending enforcement thereof), *report and recommendation adopted*, 384 F. Supp. 3d 254 (E.D.N.Y. 2019), aff'd, 815 F. App'x 612 (2d

Cir. 2020). Second, the "wrap"-style of the arbitration agreement is not dispositive as to contract validity. *See Valley v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020) ("Mere classification of a web-based contract as a 'clickwrap agreement' or a 'browsewrap agreement,' however does not necessarily determine the contract's enforceability."); *see also Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 966-68 (N.D. Ill. 2020) (reaching same conclusion and enforcing a browsewrap arbitration agreement).

## 2.      The Arbitration Agreement is Not Unconscionable

Contrary to Plaintiff's suggestion, the arbitration agreement is not unconscionable. "Under New York law, a contract is unconscionable when it is "'so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable [ ] according to its literal terms.'" *De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20-CV-6305 (MKB)(TAM), 2022 WL 4229331, at *7 (E.D.N.Y. June 9, 2022) (citations omitted). Generally, this requires "showing that such a contract is both procedurally and substantively unconscionable." *Id.* (citations and internal quotation marks omitted). Plaintiff has failed to meet her burden, and cannot do so. Hence, this case should be dismissed pursuant to Rule 12(b)(3).

### a.      The Agreement is Not Procedurally Unconscionable

Four factors are relevant to determining whether an agreement is procedurally unconscionable: (1) the nature and size of the transaction; (2) whether the party claiming unconscionability had any meaningful choice; (3) the experience and education of the party claiming unconscionability; and (4) whether there was disparity in bargaining power. *Bernardino*, 2017 WL 7309893, at *11). In her response, Plaintiff takes issue with the second factor only, arguing that she "lacked any meaningful choice when Defendant buried its arbitration provision in a link . . . at the bottom of its webpage." (Dkt. 28 at 9.)  Not so. The inclusion of an arbitration provision in hyperlinked Terms, as opposed to elsewhere, does not render an arbitration agreement

procedurally unconscionable. In fact, "the Second Circuit's decision in *Meyer* foreclose[d] a finding that a hyperlink to the [Terms of Use] is procedurally unconscionable." *Bernardino,* 2017 WL 7309893, at *11. Additionally, courts have rejected arguments that an arbitration agreement is procedurally unconscionable where it is offered on a take-it-or-leave it basis.[6] *Id.* Thus, Plaintiff's procedural unconscionability assertion fails.

### b. The Agreement is Not Substantively Unconscionable

Substantive unconscionability is determined by evaluating the fundamental fairness of the contract term itself. *See Bernardino,* 2017 WL 7309893, at *11. Generally, if terms are "grossly unreasonable" the agreement may be substantively unconscionable. *De Jesus,* 2022 WL 4229331, at *9. As a mandatory arbitration clause "is a reasonable means" to protect a party from protracted litigation, it is not, by itself, substantively unconscionable. *Id.* Plaintiff concedes that arbitration agreements are not substantively unconscionable, but argues that this one is because only L'Oréal USA has "sole discretion to decide whether to enforce [the arbitration agreement] as to any claims that may arise." (Dkt. 28 at 9-10.) Once again, Plaintiff misses the mark. Courts applying New York law "regularly uphold contracts with provisions [like this one] allowing only one party to compel arbitration."[7] *See Bernardino*, 2017 WL 7309893, at *12 (citing *Sablosky v. Edward S.*

---

[6] The other three factors, which Plaintiff does not address, also do not support procedural unconscionability. First, Plaintiff did not consummate any transaction here; Plaintiff only allegedly tried on, but did not purchase, a lipstick. (*See* Dkt. 1 ¶ 29.) Second, Plaintiff does not assert that she lacks experience or education with the internet, corporate websites, and terms and conditions therefor. Nor can Plaintiff reasonably do so, as Plaintiff previously filed multiple lawsuits based on her online interactions with other companies' websites, which belie such claims. *See Kukovec v. The Estee Lauder Cos.*, U.S.D.C. N.D. Ill. Case No. 1:22-cv-01988; *In re TikTok, Inc. Consumer Privacy Litig.*, No. 1:20-cv-04699 (N.D. Ill.). Third, there was no disparity in bargaining power, as Plaintiff had multiple other options for trying on or purchasing the same lipstick, including visiting any of L'Oréal USA's "brick-and-mortar retail shops and drugstores," (Dkt. 1 ¶13), or another website. As "[t]here is no indication that [Plaintiff] lacked a choice of other sources [besides www.lorealparisusa.com] to purchase" and try on the lipstick identified in the Complaint, there was no disparity in bargaining power. *See Starke*, 2014 WL 1652225, at *4.

[7] Plaintiff erroneously relies on *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1001 (9th Cir. 2010) to argue the substantive unconscionability of the arbitration provision. (*See* Dkt. 28 at 10.) *Pokorny* is inapposite, as it

*Gordon Co.*, 73 N.Y.2d 133, 137 (1989) ("Mutuality of remedy is not required in arbitration contracts.")). That is precisely what should occur here. Just as she failed to show procedural unconscionability, Plaintiff has failed to show substantive unconscionability. Plaintiff must arbitrate her claims.

### B. The Complaint Fails To State A Plausible Legal Claim Under BIPA

If the Court does not dismiss this case in favor of arbitration, then the Complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiff fails to state a claim for relief that is plausible on its face. First, L'Oréal USA complied with the requirements of Sections 15(a) and (b), as the website that Plaintiff visited, www.lorealparisusa.com, has a BIPA-compliant Privacy Policy, and Plaintiff received adequate notice of—and consented to—the Privacy Policy before using the VTO tool. Second, Plaintiff must do more than "merely parrot the statutory language" of BIPA—she must plead factual content allowing the Court to reasonably infer that L'Oréal USA was "in possession" of or "otherwise obtain[ed]" her biometric data. *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 964, 968 (N.D. Ill. 2020). Plaintiff has not met her burden, and thus her Complaint should be dismissed.

#### 1. Plaintiff's BIPA Claims Are Legally Untenable

##### a. L'Oréal USA's Privacy Policy Complies With the Requirements of Section 15(a)

Plaintiff's Section 15(a) claim is not legally viable because Plaintiff consented to a Privacy Policy meeting the requirements of Section 15(a). Plaintiff argues that the Privacy Policy violates Section 15(a) simply because it does not use the word "biometrics." (Dkt. 28 at 13.) But Plaintiff

---

was decided under California law, and California law is not substantively similar to New York law with respect to substantive unconscionability. *Compare Pokorny*, *supra* (mutuality the "paramount consideration" under California law) *with Sablosky*, 73 N.Y.2d at 137 (mutuality not required under New York law).

is mistaken, as no such requirement exists in the statute, and the Privacy Policy states, among other things, that "L'Oréal USA may "collect and store [a user's] image(s)" after use of the VTO tool." (See Dkts. 18-4, 18-8.)  Plaintiff's additional pontifications about perceived shortfalls in the Privacy Policy, including that it "does not contain a retention schedule," "does not inform users of the 'specific purpose and length of time' for which their biometric information is collected," and "contains no guidelines on destruction" are equally unavailing. (*See* Dkt. 28 at 13.)  The Privacy Policy provides the pertinent information required under BIPA:  it states that L'Oréal USA will "retain your Personal Information for as long as your account is active or as needed to provide you services and as necessary to comply with our legal obligations, resolve disputes, and enforce our agreements;" and specifies that "we may delete certain records that contain Personal Information you have submitted through the Sites," while further identifying how users may request deletion of their Personal Information. (See Dkts. 18-4, 18-8.)  This is all that is required under the plain language of the statute, and Plaintiff's claim under Section 15(a) therefore fails.

b.  **Plaintiff Received the Required Notice Under Section 15(b) and Provided a Release**

Plaintiff's Section 15(b) claim is likewise nonviable because, as thoroughly detailed in L'Oréal USA's Motion, the Consent Pop-Up and Privacy Policy satisfy the requirements of Section 15(b), namely the provision of a compliant notice and collection of a release. L'Oréal USA's Privacy Policy, which appears in the Consent Pop-Up and at conspicuous hyperlinks on every page of www.lorealparisusa.com, provides the requisite notice, as it advises users, like Plaintiff, about collection and storage of images from VTO users, including the purpose therefor, possible usages and disclosures thereof, and the ways to request deletion/non-usage of VTO user information. (*See* Dkts. 18-4, 18-8.)  While Plaintiff challenges the Privacy Policy because it does not specifically include the words "BIPA" or "biometric," but this contention emphasizes

semantics over substance, and has no basis in the statute. Likewise, Plaintiff's assertion that the Privacy Policy "lacks a 'specific purpose and length of time' that the biometric information" is being collected is also flawed, as the Privacy Policy does, in fact, specify how long Personal Information will be retained. Because Plaintiff provides no legitimate challenge to the Privacy Policy and concedes that she provided the requisite release before accessing the VTO tool, when she clicked "I Consent" in the VTO Consent Pop-Up (*see* Dkt.1 ¶¶ 16-17, 32; Dkt. 18-10),[8] Plaintiff cannot maintain a Section 15(b) claim under these circumstances.

## 2.    <u>Plaintiff Fails to Meet Her Pleading Burden Under Rule 8</u>

Even if Plaintiff could bring viable Section 15(a) and (b) claims here, dismissal would still be appropriate and necessary because the Complaint is inadequately pled. Plaintiff rightfully notes that her pleading obligation includes pleading claims that are facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But Plaintiff's Complaint fails to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Rather, Plaintiff largely parrots the statute, and alleges wholly conclusory allegations as to possession and collection. *Heard,* 440 F. Supp. 3d at 964. This is insufficient under Rule 8, and the Complaint must be dismissed.

*First*, Plaintiff fails to adequately plead possession—the critical element to state a Section 15(a) claim—because the Complaint does not plead sufficient factual allegations to show that L'Oréal USA "exercised any form of control over the data" or had her biometrics. *See* 740 ILCS 14/15(a) (requiring only a private entity "*in possession of biometric[s]*" to develop a written policy) (emphasis added); *Heard,* 440 F. Supp. 3d at 964, 968. For example, the Complaint does not plausibly allege that L'Oréal USA could freely access Plaintiff's biometrics or even how it

---

[8] Plaintiff does not dispute that she clicked "I consent" or that this qualifies as a release under Section 15(b). Her silence is a concession. *See Yuknis v. Atherton*, 668 F. Supp. 1173, 1175 at n.1 (N.D. Ill. 1987).

could do so. *Id.; see also Jacobs v. Hanwha Techwin Am., Inc.,* 2021 WL 3172967 at *3 (N.D. Ill. Jul. 27, 2021). Similarly, the Complaint does not allege (because it cannot) that L'Oréal USA stores Plaintiff's biometrics on its servers. *See Heard*, 440 F. Supp. 3d at 968. Most critically, and noticeably, the Complaint does not allege that Plaintiff's biometrics ever leave her device at all. This fatal omission is not an accident; L'Oréal USA is not, and never was, in possession of Plaintiff's biometrics, and L'Oréal USA repeatedly advised Plaintiff before she filed this Complaint that no biometrics ever leave the personal device of any user of the VTO tool on www.lorealparisusa.com. *See Kukovec v. L'Oréal USA Prods., Inc.*, U.S.D.C. N.D. Ill. Case No. 1:22-cv-01990 at Dkts. 28, 30; *see also* Fed. R. Civ. P. 11(b)(3). Because the VTO software runs locally on Plaintiff's device, she is in sole possession of any biometric data, a fact that Plaintiff herself could have discovered if she conducted an adequate pre-filing investigation on her own device.

Plaintiff's contention that she has adequately pleaded a Section 15(a) claim because the Complaint contains some allegations that "give rise to the reasonable inference that L'Oréal possessed [her] biometric data while [she] used the tool" (*see* Dkt. 28 at 12 (citing Dkt 1 ¶¶13-20)), is simply inaccurate. The Complaint alleges, without factual support, that the VTO tool "operates by capturing the facial geometry of users' photos," and then illogically speculates that the "facial geometry scans are used to identify . . . the user's face in order to accurately overlay the virtual makeup product[.]" (Dkt. 1 at 19.) Next, the Complaint merely parrots BIPA's statutory language, and alleges in conclusory fashion that "[L'Oréal USA] does not inform consumers who use the [VTO] in writing that it is *capturing or collecting* facial geometry[.]" (*Id*. at 21 (emphasis added).) The Complaint's conclusory allegations are devoid of factual support to show L'Oréal

USA controlled, accessed, or stored Plaintiff's data, and thus fail to create a reasonable inference of any Section 15(a) violation. *See Heard*, 440 F. Supp. 3d at 968.

*Second*, Plaintiff fails to adequately plead a Section 15(b) claim because the Complaint does not contain sufficient factual allegations to show that L'Oréal USA collected or captured her biometrics, or even, took "an active step" to collect or obtain her biometrics. *See Jacobs,* 2021 WL 3172967 at *2. Indeed, the Complaint does not allege that L'Oréal USA took *any* step to collect or otherwise obtain her biometrics—Plaintiff's repeated conclusory allegations that L'Oréal USA "collected" her biometric data are not grounded in any specific facts, and the Complaint does not contain the necessary "how, when, or any other factual detail" to support Plaintiff's implausible conclusions about capture or collection of her biometrics. *See Jacobs,* 2021 WL 3172967 at *3. Unfounded speculation is simply insufficient to prop up Plaintiff's deficiently pled Section 15(b) claim. *See* Fed. R. Civ. P. 8(a).

Plaintiff argues that she has "provided ample factual basis to support her allegations" because the allegations in her Complaint are "comparable to *Powell v. Shiseido Americas Corp.*, No. 21-cv-2295 (C.D. Ill. filed Nov. 30, 2021)," where another district court denied a motion to dismiss Section 15(a) and (b) claims. (*See* Dkt. 28 at 12.) However, Plaintiff's dependence on *Powell* is misplaced. *Powell* did not involve the same affirmative consent/release that Plaintiff has provided here. Furthermore, unlike here, where L'Oréal USA argues for dismissal because, *inter alia*, L'Oréal USA does not possess biometrics, the VTO tool does not capture or collect biometrics, and the Complaint fails to adequately allege otherwise, the defendant in *Powell* limited its motion to dismiss argument to the plaintiff's failure to allege *active* participation by the defendant in the collection or capture of biometrics. (*See* Dkt. 28 at 12.)

*Finally,* at a minimum, Plaintiff's claims about websites that she did not visit (*see* Dkt. 1

14

¶¶ 27, 36) must be dismissed because Plaintiff cannot possibly satisfy her Rule 8(a) obligation with respect to such websites. The Complaint is devoid of any factual allegations for websites other than www.lorealparisusa.com. Accepting as true Plaintiff's allegation that she only visited www.lorealparisusa.com (Dkt. 1 ¶ 27), her allegations about other websites she did not ever visit amount to nothing but rank speculation, which the Court need not credit. *See Ashcroft*, 556 U.S. at 678. Plaintiff's multi-paragraph colloquy about the difference between the pleading stage and the class certification stage does not refute L'Oréal USA's point, which has nothing to do with Plaintiff's (un)suitability as a class representative. Plaintiff has not sufficiently pleaded any facts to support legally viable BIPA claims about websites she did not visit; she cannot plausibly do so; and the Court need not draw unwarranted inferences based on Plaintiff's conclusory assertions. Therefore, Plaintiff's speculative claims about websites she did not visit should be dismissed.

## III. <u>CONCLUSION</u>

For the foregoing reasons L'Oréal USA requests that the Court dismiss this action with prejudice in favor of arbitration, pursuant to Rule 12(b)(3), or for failure to state a claim, pursuant to Rule 12(b)(6).

Dated: October 31, 2022

Respectfully submitted,

*/s/ Aaron D. Charfoos*
Aaron D. Charfoos (Bar No. 6277242)
Adam M. Reich (Bar No. 6329295)
Emma J. Lanzon (Bar No. 6329995)
PAUL HASTINGS LLP
71 S. Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: 312.499.6000
aaroncharfoos@paulhastings.com
adamreich@paulhastings.com
emmalanzon@paulhastings.com

*Counsel for Defendant,*
L'ORÉAL USA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2022, a copy of the foregoing was filed electronically and served via CM/ECF upon the following parties:

Elizabeth C. Chavez
Bret K. Pufahl
Kathleen C. Chavez
Peter L. Currie
Robert M. Foote
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 W. State Street, Suite 200
Geneva, IL 60134
Tel. No.: (630) 232-7450
Fax No.: (630) 232-7452
Email: ecc@fmcolaw.com
bkp@fmcolaw.com
kcc@fmcolaw.com
plc@fmcolaw.com
rmf@fmcolaw.com

Hassan A. Zavareei
Allison W. Parr
Glenn E. Chappell
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, DC 20036
Email: hzavareei@tzlegal.com
aparr@tzlegal.com
gchappell@tzlegal.com

*Counsel for the Plaintiff and the Putative Class*

*/s/ Heather Copeland*

Heather Copeland