**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| MORGAN KUKOVEC, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | |
| *Plaintiff,* | Case No. 1:22-cv-03829 |
| | Hon. Jeffrey T. Gilbert, *presiding* |
| L'ORÉAL USA, INC. D/B/A L'ORÉAL PARIS, | |
| *Defendant.* | |

## STIPULATED JOINT ESI PROTOCOL AND ORDER

WHEREAS, Plaintiff Morgan Kukovec ("Plaintiff" or "Kukovec") and Defendant L'Oréal USA, Inc. ("L'Oréal USA") ("Defendant") (collectively, the "Parties") are engaged in discovery proceedings in the above-captioned civil lawsuit (the "Lawsuit"), and their counsel have engaged in substantive discussions regarding the discovery of documents ("Documents") and electronically stored information ("ESI").

WHEREAS, the Parties agree that this Stipulated Joint ESI Production and Metadata Protocol (the "Protocol") in no way alters the Parties' rights or obligations with respect to the discovery of Documents and ESI under the Federal Rules of Civil Procedure and applicable law, including any Parties' right to seek or establish an additional protocol governing the search of Documents or ESI, and that this Protocol is intended to supplement the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Illinois, this Court's Standing Order in Civil Cases, and any other applicable orders and rules.

NOW, THEREFORE, the Parties by their respective undersigned counsel stipulate to the following process for the Parties' production of ESI and other Documents in response to discovery requests ("Discoverable Information") in the Lawsuit:

I.  **SCOPE & DEFINITIONS**

1.  <u>General</u>.  The procedures and protocols outlined herein govern the production of Discoverable Information by all parties to the Lawsuit, whether currently involved or become so in the future (collectively, the "Parties"). The use of the singular form of the definitions provided herein includes the plural form. The Parties will take reasonable steps to comply with this agreed-upon Protocol for the production of Discoverable Information. This Protocol does not supersede prior pretrial orders issued in this action, which shall remain in effect except to the extent inconsistent with the provisions herein.

This Protocol also applies to any third-party discovery pursuant to Federal Rule of Civil Procedure 45.

2.  <u>Document</u>. The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rules of Civil Procedure 26 and 34. The term "Document" shall include Hard-Copy Documents and ESI as defined herein.

3.  <u>Electronically Stored Information or ESI</u>.The term "Electronically Stored Information" or "ESI" as used herein includes the meaning of that term as used in Federal Rules of Civil Procedure 26 and 34.

4.  <u>Hard-Copy Document</u>. The term "Hard-Copy Document" means a Document existing in paper form at the time of collection.

5.  <u>Hash Value</u>. The term "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical

2

algorithm applied to the characteristics of the data set. The most commonly used algorithms are known as MD5 and SHA-1.

6. _Lawsuit_. The term "Lawsuit" refers to the above-captioned action, *Morgan Kukovec v. L'Oréal USA, Inc*., Case No. 1:22-cv-03829 (N.D. Ill.)

7. _Native Format or Native File_. The term "Native Format" or "Native File" refers to the format in which ESI was created, maintained, generated, used, and/or stored by the Producing Party in its ordinary course of business and its regularly conducted activities.

8. _Metadata_. The term "Metadata" means: (i) information imbedded in or associated with a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File which describes the characteristics, origins, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

9. _Optical Character Recognition or OCR_. The term "Optical Character Recognition" or "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

10. _Producing Party_. The term "Producing Party" means a party that is producing Documents in the Lawsuit.

11. _Requesting Party_. The term "Requesting Party" means a party that has issued discovery requests to or is receiving Documents from the Producing Party.

12.     Searchable Text.  The term "Searchable Text" means the native text extracted from an ESI and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

13.     Load File. The term "Load File" means an electronic file provided with a production set of document images that facilitate the loading of such information into a Requesting Party's document review platform, and the correlation of such data in the platform.

## II.     FILTERING ESI

1.     Deduplication. A Producing Party will make reasonable efforts to globally deduplicate identical ESI within their own productions, as follows:

a.     Electronic Documents That Are Not Email. Duplicate non-email ESI (such as Microsoft Word Documents) may be identified by binary file content using a commercially accepted method (e.g., MD5 or SHA-1 Hash Values). All ESI bearing an identical value are a duplicate group. Prior drafts of Documents and ESI will not be considered duplicates. The Producing Party is only required to produce one document image or Native File for duplicate ESI within the duplicate group; however, the Producing Party will identify the additional custodian(s) (i.e., All Custodian metadata field set forth in Section III.8 below) for duplicates not produced, to the extent such information can be automatically populated by the processing of the Documents. The Requesting Party may also request a reasonable number of duplicate copies identifying particular custodians, and the parties will meet and confer concerning such request.

b.     Email. Duplicate email or other messaging files may be identified utilizing a commercially accepted method (e.g., MD5 or SHA-1 Hash Values) based upon the

email family, which includes the parent email and all attachments. For emails with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only email messages in which the parent document and all attachments are identical will be considered duplicates. The Producing Party may produce only one document image or native file for duplicate ESI within the duplicate group; however, in the event that email is collected from a custodial source the Producing Party will identify each custodian(s) (i.e., All Custodian metadata field set forth in Section III.8 below) from whom the duplicate email was collected, provided that such information can be automatically populated with industry standard ESI processing tools. Notwithstanding the foregoing, the Requesting Party may request a reasonable number of duplicate copies identifying particular custodians, and the parties shall meet and confer about any such request. If the email files were collected directly from the Microsoft Exchange server, outlook.ost files may be excluded from processing as duplicative of outlook.pst files unless only the .ost file version is available.

2.  Email Threading.  The Parties may use industry standard analytic tools to employ "email thread suppression." As used in this Protocol, email thread suppression means producing the most inclusive email in a conversation thread, as well as emails with unique attachments within the same thread group and excluding emails constituting duplicate emails within the produced conversation thread. Only email messages that are included within a more complete, produced thread part will be considered appropriate for exclusion from production. Agreed upon metadata will not be produced for email thread parts suppressed under this Paragraph. Suppressed thread parts need not be reflected on the Producing Party's privilege

5

log. <u>Embedded Objects</u>. The Parties agree that other embedded objects (as distinct from embedded files), including but not limited to logos, icons, emoticons, and footers, need not be produced as separate Documents by a Producing Party; however if the Producing party does not produce embedded objects as separate Documents, such embedded objects will be produced within the Document itself.

3.     <u>Zero-Byte Files</u>. The Parties shall filter out files identified as zero bytes in size.

4.     <u>Search Methodology</u>. The Parties recognize and agree that each party may use one or more search methodologies to collect, review, and produce relevant and responsive, non-privileged documents and ESI and undertake reasonable efforts to locate discoverable information. The Parties agree to meet and confer to discuss the use of ESI sources, custodians, search terms, filters, and date ranges, and/or the use of advanced search and retrieval technologies.

Within 30 days after Rule 34 requests for production of documents have been served or by another date agreed upon by the Parties, a Producing Party shall specify the technique or techniques it intends to use to search for material it reasonably anticipates will be responsive to discovery requests, as well as the custodians and sources of ESI it will search. If the Requesting Party objects to the use or exclusion of any particular technique(s), custodians, or sources of ESI, the Parties will timely meet and confer regarding the matter and promptly submit any unresolved disputes to the Court for resolution.

The Parties agree to meet and confer regarding the Search Protocol, and if they cannot resolve disputes, if any, regarding the Search Protocol, the Parties agree to promptly raise the disputes for resolution by the Court. The Parties further, agree that the fact that a document is hit or captured by the application of any agreed upon search methodologies or search terms

does not mean that such document is necessarily responsive to any propounded discovery request, non-privileged and validly subject to production, or otherwise relevant to this Lawsuit. The Parties likewise agree that the fact that a particular search technique or methodology captures a responsive document or documents does not necessarily mean that such technique or methodology is reasonable, proportionate, or necessary. The Parties also agree that a Producing Party cannot withhold documents that it knows to be relevant and responsive to a Requesting Party's requests solely because such document was not hit or captured by the application of agreed upon search methodologies or search terms. Determinations of the discoverability, responsiveness, and privilege of the documents and materials hit or captured by the application of any selected search methodologies shall still be made by the Producing Party, without waiver of any of the Requesting Party's rights to seek further discovery.

A Producing Party who intends to use search terms to identify documents responsive to Rule 34 requests for production will describe a search protocol that will include: (a) the criteria to be used to identify the universe of documents to which search terms will be applied (e.g., date range, custodians, and sources of ESI), and (b) proposed search terms to be applied to that universe of documents, subject to revision based on, for example, meet and confer of the Parties and the number of hits returned by each term. A Requesting Party may also suggest search terms to be applied. After providing the Requesting Party an opportunity to suggest search terms to be applied, the Producing Party shall run all proposed search terms, including terms proposed by the Producing Party and the Requesting Party, and provide a report showing (i) the number of documents in the document collection against which the search was conducted, (ii) the "hit count" of the raw number of documents identified per search term per custodian, and (iii) the number of unique documents identified per search term per custodian; (iv) the total

7

number of unique documents with hits across all search terms and documents within families

containing such unique documents (i.e., the review universe if all terms were to be accepted

and reviewed). The Parties shall then meet and confer to the extent any Party seeks to refine

search terms based on the aforementioned reports. The Producing Party shall provide these

same reports for any refined search terms to facilitate further cooperation between the Parties.

The Parties agree to propose search terms, custodians, and date ranges that are

proportional to the needs of the case and not unduly burdensome. The Parties further agree that

search terms may be applied to a statistically representative random sample to evaluate whether

proposed search terms are overbroad or fail to capture certain responsive information. If a

Producing Party applies the search terms to a sample set, the Producing Party shall disclose:

(i) the total number of documents in the sample set (ii) all custodians and data sources

comprising the same set; (iii) the total number of documents in the complete set from which

the sample was drawn; and (iv) all custodians and data sources comprising the complete set.

5.     The Parties agree that they are not required to re-produce documents produced in

this litigation prior to the entry of this ESI Protocol.

## III.    PRODUCTION FORMAT

1.     <u>TIFF/Native File Format Production</u>. Documents will be produced in image format,

accompanied by document-level text files containing Searchable Text (either extracted text or

text created with Optical Character Recognition ("OCR")). Documents that do not contain

color will be produced as black-and-white Group IV single page .TIFF files (300 DPI).

Documents that do contain color (e.g., charts, graphics, pictures) will be produced as single

page .JPEG files (300 DPI). Metadata Load Files will be produced in .DAT file format and

image Load Files will be produced in .OPT format (i.e., industry standard "Concordance" formatted Load Files). The exceptions to the default production format just described are:

a. Responsive, non-privileged, and unredacted spreadsheets (e.g., Microsoft Excel file) will be produced in Native Format with a placeholder .TIFF image stating, "Document Produced Natively."

b. Responsive, non-privileged, redacted Excel-file Documents may be produced as Native Files with native redactions, with a placeholder .TIFF image stating, "Document Produced Natively" or the Producing Party may produce such Excel-file Documents in .TIFF format with an OCR text file matching the redacted version of the Document in lieu of a Native File. The Producing Party shall, however, make reasonable efforts to ensure that any such Excel-file Documents that are produced only as .TIFF images are formatted so as to be readable. Notwithstanding the foregoing, the Requesting Party may request that the Producing Party produce redacted Excel-file Documents as Native Files even if the Producing Party already produced in .TIFF format; the parties shall meet and confer about such request.

c. Other ESI that is difficult or impracticable to render in image format (.TIFF or .JPEG), such as video or audio files, may be produced in its native form with a placeholder .TIFF image stating, "Document Produced Natively."

d. All presentation files (e.g., PowerPoint) shall be produced natively and as TIFF files with speaker note view visible except for redacted presentation files that will only be produced as TIFF files.

9

e. A Producing Party retains the option to produce ESI in alternative formats, which may include Native Format, or a combination of native and alternate formats (including natively redacted Documents). However, nothing in this paragraph waives a Receiving Party's right to seek documents produced in accordance with Section III.1-1.d.

2. <u>Database Production.</u> Discoverable Information that is stored in a database (i.e., structured data) will be produced in reasonably usable standard report formats available in the ordinary course of business. Upon review of the report(s), the Requesting Party may request from the Producing Party additional information to explain any codes, abbreviations, and/or other information necessary to ensure the report is reasonably usable. In the event of such a request, the Parties will meet and confer as to the most reasonable means to provide the relevant and proportional information requested. Nothing in this paragraph waives any Parties' right to take any discovery from the other party. If an existing report form is not reasonably available, the Producing Party may make reasonable efforts to export from the Structured Data System discoverable information in a format compatible with Microsoft Excel if such an export would not degrade the usefulness of the data.

3. <u>Numbering/Endorsement.</u> All produced Discoverable Information will have a unique Bates Number assigned, regardless of the format of the Discoverable Information, and the file produced will be named with the unique Bates Number. This Bates Number should have a consistent bates prefix across all productions from a producing party, and should have a consistent number of digits in the numerical portion, through the use of padding "0"s. For Discoverable Information produced in .TIFF image format, each .TIFF image will have a legible, unique Bates Number electronically "burned" onto the image at a location that does

10

not obliterate or obscure any information from the source Document. A Producing Party should use a consistent format for the Bates Numbers it uses across its productions.

    a. In the case of materials deemed confidential in accordance with any applicable federal, state, or common law, pursuant to a protective order or confidentiality stipulation entered into by the Parties, Documents and ESI should be marked in accordance with that order.

    b. The Parties agree to meet and confer if there are any disputes regarding the specific details of numbering and endorsement format.

4. <u>Scanned Documents</u>. The Parties agree that Hard-Copy Documents may be scanned and produced in an imaged format set forth in Section III.1. When scanning Hard-Copy Documents, the Parties shall undertake reasonable efforts to ensure that distinct Documents are not merged into a single record, and single Documents are not split into multiple records (i.e., the Parties shall attempt to logically unitize scanned Hard-Copy Documents).

The Parties will make their best efforts to unitize Documents correctly and will commit to address situations where there are improperly unitized Documents

    a. <u>Objective Coding Fields</u>. The following coding fields should be provided, if applicable: (1) beginning Bates Number; (2) ending Bates Number; (3) beginning attachment Bates Number; (4) ending attachment Bates Number; and (5) Confidentiality.

    b. <u>Text</u>. OCR text will be provided for scanned Hard-Copy Documents.

    c. <u>Load Files/Cross-Reference Files</u>. Fielded data should be exchanged via a document-level-database Load File in standard Concordance (.DAT) format. All image data should be delivered with a corresponding image Load File in standard

Opticon (.OPT) format. The total number of image files referenced in the image Load File should match the total number of images in the production delivery.

5.      <u>Native Files</u>. The Parties agree that, apart from the exceptions set forth in Section III.1.a-d, any Discoverable Information may be produced in the image format set forth in Section III.1. Subsequent to the production of image formats, however, the Requesting Party may request from the Producing Party that certain imaged files be produced in Native Format according to the following protocol:

a.   The Requesting Party shall provide a list of Bates Numbers of the imaged Documents sought to be produced in Native File format. The Requesting Party also shall provide the reasons for the request.

b.   The Producing Party shall either produce the Native Files or object to the demand for any particular file as unreasonable as follows:

   i.   The Producing Party will respond in writing, setting forth its objection(s) to the production of the requested Native Format files.

   ii.  The Parties will Meet and Confer regarding the request and corresponding objection(s), and if the Parties are unable to agree as to the production of the requested files in Native Format, the Parties shall submit the matter to the Court.

6.      <u>Encrypted Files</u>. To the extent practical, the Producing Party shall take reasonable efforts to ensure that encrypted files are decrypted prior to processing, search, and production.

7.      <u>Production Media</u>. The Producing Party may produce Documents via a secure file transfer mechanism and/or on readily accessible, computer or electronic media including: CD-ROM, DVD, flash drive, or external hard drive (with standard PC compatible interface)

("Production Media"). All Production Media will be encrypted prior to production and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.

8. <u>Metadata</u>.

a. The Parties agree to produce a Load File containing the available Metadata fields below, to the extent a Document is not redacted and the fields exist in the ordinary course of business or are automatically created in the processing of the Documents:

| Field Name[1] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| CustodianOther or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The director structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MDS or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| Field Name[1] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| Thread Index | Email | Message header identifier, distinct from ''PR_Conversation_Index'', that permits threading of email chains in review software. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified. |
| TimeSent | Email | Time email was sent. |
| Timezone Used | All | Time zone used to process data during document collection and processing. |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |

b. No party has an obligation to create or manually code Metadata fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original Metadata of ESI except for: (1) beginning Bates Number; (2) ending Bates Number; (3) beginning attachment Bates Number; (4) ending attachment Bates Number; and (5) Confidentiality.

c. The Parties may rely on Metadata automatically generated by the processing of the ESI.

d. For redacted Documents, the Producing Party may exclude any metadata field that would reveal appropriately redacted information, except that in all cases Producing Party must provide: (1) beginning Bates Number; (2) ending Bates Number; (3) beginning attachment Bates Number; (4) ending attachment Bates Number; and (5) Confidentiality.

## IV. PRIVILEGE

1. <u>Privilege</u>. Each Party may review Documents for privileged information (or other information subject to a recognized immunity from discovery) prior to production. In accordance with Federal Rule of Civil Procedure 26(f)(3)(D), the Parties agree, and have separately asked the Court to enter as part of their stipulated protective order ("Protective Order") (Dkt. 85) an order that, pursuant to Federal Rule of Evidence 502(e), no disclosure, production, or exchange of information in the Lawsuit constitutes a waiver of attorney-client privilege or of any work product protection in this or any other federal or state proceeding.

2. <u>Redactions</u>.

a. The Producing Party may redact any Document (image or native) or Metadata field that is protected from disclosure by applicable privilege or immunity or that

15

is required by applicable law or regulation ("Privileged Information"). Documents (image or native) and Metadata fields that include both privileged and non-privileged information will be produced with the privileged information redacted in such a way as to show the location of the redaction within the Document and to display the reason therefore (e.g., "Attorney-Client Privilege" or "Work Product" or equivalent) on the face of the image. Documents or portions thereof withheld on privilege grounds will be identified in a privilege log in accordance with Federal Rule of Civil Procedure 26(b)(5). The content of redacted information need not be included on the privilege log.

b. If a Document that otherwise would be produced in Native Format requires redaction, the Producing Party shall make reasonable efforts to redact the Native Format of the files. If such redaction cannot be applied, then such Document may be produced in .TIFF format with an OCR text file matching the redacted version of the Document in lieu of a Native File. The Producing Party shall, however, make reasonable efforts to ensure that any such Documents that are produced only as .TIFF images are formatted so as to be readable. The Native File version of redacted Documents need not be produced unless the Parties agree otherwise.

c. Neither party waives the right to object to the other party's redactions.

3. <u>Privilege Logs</u>.

a. The obligation to provide a log of privileged or work-product-protected materials pursuant to Federal Rule of Civil Procedure 26(b)(5)(A) presumptively shall not apply to attorney-client communications or work product created after the filing of Plaintiff Morgan Kukovec's initial complaint against a L'Oréal entity

(specifically, *Kukovec v. L'Oréal USA Products, Inc.,* Case No. 1:22-cv-01453 (N.D. Ill.) (Mar. 18, 2022)) (the "Initial Complaint"), including:

    i.  Communications between any Parties and its corporate counsel or outside counsel;

    ii.  Any third parties to whom privilege extends in this jurisdiction;

    iii.  Attorney work product created by corporate counsel or outside counsel for any Parties;

    iv.  Internal communications within corporate counsel or outside counsel for any Parties; and

    v.  Communications between or among co-counsel.

b.  The Parties agree that, except as provided herein regarding the categories of presumptively exempt privileged and work product materials set forth in Section IV.3.a, they will produce privilege logs and will exchange information regarding claims of privilege and/or work-product protection.

c.  Privilege logs will be produced in an Excel format, or other agreed-upon format, which allows the Receiving Party to search and sort any and all columns and entries of the privilege log.

d.  A log of the documents withheld or redacted on the basis of privilege will be generated in accordance with Magistrate Judge Gilbert's Standing Order on Privilege Logs from the following corresponding metadata fields to the extent they exist as electronic metadata associated with the original electronically stored information:

    i.      Author

ii.       Subject

iii.      Title

iv.      Attachment Name

v.      File Name

vi.      File Path(s)

vii.      Last Saved/Edited By

viii.      Custodian(s)

ix.      Sender/From

x.      Recipient/To

xi.      CC

xii.      BCC

xiii.      Sent Date/Time

xiv.      Created Date/Time

xv.      Date/Time Last Modified

xvi.      Family relationship (e.g., identifying parent emails and attachments)

xvii.      File Extension

xviii.      Attachment Count

xix.      Hash Value

xx.      Conversation ID or Thread ID

xxi.  Attachments to emails shall be logged as separate documents on the log, with family relationships identified.

e.  Parties may substitute an alternative description of the content within the identified metadata field(s) where the content of the metadata field reveals privileged information.

f.  Parties will also include on the privilege log fields containing: (a) a unique document ID (e.g. a privilege log control number) or Bates Number; (b) the log production date ; (c) information sufficient to understand the family relationship of withheld or redacted documents; (d) the privilege asserted (e.g., attorney-client, work product); and (e) a description of the nature of the withheld or redacted document or communication in a manner that, without revealing information claimed privileged, will enable a party to assess the privilege claim.

g.  To the extent a document is included on the log where no attorney is listed as the author, sender or recipient, the description shall include sufficient information regarding which attorney(s) requested or were involved in the preparation of the document that is claimed to be privileged.

h.  Should a Receiving Party have a good-faith reason to believe a particular entry or portion of the entry log is not accurate or does not provide adequate information, the Receiving Party may request additional information, which will be provided to the Receiving Party upon reasonable request within a reasonable time period (at least fourteen days), in a supplemental privilege log consistent with the Rules.

i.  To the extent a Producing Party seeks to withhold or redact any hard-copy documents or documents lacking sufficient metadata, the Producing Party shall log - if known - the following information for such documents consistent the Rules:

19

- a statement of the ground(s) alleged for withholding all or part of such document;

- the date the document was prepared;

- the date the document was distributed;

- the identity of the document's author;

- the identity of all recipients of the document;

- an indication of all authors or recipients of the document who are attorneys;

- an indication of all authors or recipients of the document who are third parties and the nature of each third-party relationship;

- a description of the nature of the withheld or redacted document in a manner that, without revealing information claimed privileged or protected, will enable a party to assess the privilege claim; and

- a unique document ID or Bates Number.

j.   Notwithstanding a claim of privilege, any document containing both privileged and non-privileged matter must be produced with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself.

k.   Privilege log identification is not required for privileged communications exchanged after the filing of the Initial Complaint between the Producing Party and its outside counsel.

## V.    GENERAL PROVISIONS

1.    <u>Discoverability and Admissibility</u>. Nothing in this Protocol shall be construed to affect the admissibility of any Discoverable Information. All objections to discoverability or admissibility are preserved and may be asserted at any time. Nothing in this Protocol limits the

discoverability or admissibility of any information otherwise discoverable or admissible under the Federal Rules of Civil Procedure.

2. <u>Limitations & Non-Waiver</u>. The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and work product doctrine.

3. <u>Cooperation and Proportionality</u>. The Parties agree to take the proportionality considerations addressed in the Federal Rules of Civil Procedure into account for purposes of preservation and production of ESI and Hard-Copy Documents in this Lawsuit. This Protocol is not intended to expand or limit the Parties' obligations under Federal Rules of Civil Procedure 1, 26 and 34.

4. <u>Meet and Confer</u>. The Parties agree to Meet and Confer regarding any disagreements that arise as a result of the implementation of this Protocol.

5. <u>Variations</u>. In light of the varying and disparate data systems and architectures employed by the Parties, variations from this Protocol may be required. In the event that any Parties identify a circumstance where application of this Protocol is not technologically possible or practicable, the Producing Party will disclose to the Requesting Party the reason(s) for, and circumstances surrounding, the need to vary from this Protocol, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Protocol.

6. <u>Modification</u>. This Protocol supersedes any prior discussions or agreements of the Parties on the topics contained herein, and to the extent it is contrary to any such agreements or discussions, the terms of the Protocol control. This Protocol may be modified or amended either by written agreement of the Parties submitted to the Court for approval or by order of the Court. Any practice or procedure set forth herein may be varied by agreement of the Parties,

21

which will be confirmed in writing, where such variance is deemed appropriate to facilitate the proportional, timely, and economical exchange of Discoverable Information.

      7.    <u>Stipulated Protective Order</u>. The terms of the separate stipulated Protective Order governing production and treatment of confidential information submitted by the Parties on February 3, 2025 also govern all productions pursuant to this Protocol.

**SO ORDERED**

Dated: 2/5/2025

HON. Jeffrey T. Gilbert
U.S. Magistrate Judge

Date: February 3, 2025                              Respectfully Submitted,

_/s/Elizabeth C. Chavez, Esq._                      _/s/ Aaron D. Charfoos_
Elizabeth C. Chavez                                 Aaron D. Charfoos
Kathleen C. Chavez                                  Adam M. Reich
Bret K. Pufahl                                      Emma J. Lanzon
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC                 PAUL HASTINGS LLP
1541 E. Fabyan Parkway, Suite 101                   71 S. Wacker Drive, Suite 4500
Geneva, IL 60134                                    Chicago, IL 60606
Telephone: (630) 232-7450                           Telephone: (312) 499-6000
ecc@fmcolaw.com                                     aaroncharfoos@paulhastings.com
kcc@fmcolaw.com                                     adamreich@paulhastings.com
bkp@fmcolaw.com                                     emmalanzon@paulhastings.com

_/s/ Hassan A. Zavareei_                            _Counsel for Defendant,_
Hassan A. Zavareei (Pro Hac Vice)                   _L'ORÉAL USA, INC._
Allison W. Parr (Pro Hac Vice)
Shana H. Khader (Pro Hac Vice)
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900
hzavareei@tzlegal.com
aparr@tzlegal.com
skhader@tzlegal.com

_Counsel for Plaintiff_